J-S02007-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KYLE DICKERSON | : | |
| | : | |
| Appellant | : | No. 1432 EDA 2025 |

Appeal from the PCRA Order Entered May 15, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0902141-1994

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 4, 2026**

Appellant Kyle Dickerson appeals from the order dismissing his serial Post-Conviction Relief Act[1] (PCRA) petition as untimely. Appellant claims that the PCRA court erred by dismissing his petition as untimely. After review, we affirm.

The factual and procedural history of this case was previously set forth by this Court as follows:

> [O]n June 27, 1993, Appellant and five other males were gathered together somewhere in Philadelphia 'getting high.' The group decided to go commit a robbery, and split up into two cars, a blue Mercedes Benz and a black Ford Escort station wagon with tinted windows. Duane King, Troy Clinkscales, and Appellant rode in the Escort, and Ivan Bingham, Larry Turner, and Shawn Harris rode in the Mercedes. As the two cars reached a corner where three young people were gathered, Appellant pulled out a weapon; however, Clinkscales then asked to switch vehicles, and the cars went around the block so he and Harris could change places. The

_____

[1] 42 Pa.C.S. §§ 9541-9546.

two cars then returned to the area and the Escort stopped at the corner where the young people were. Appellant and Harris then jumped out of the Escort with weapons drawn, and confronted the three. Unfortunately, two of the three decided to run, and Appellant and Harris fired shots at them. One of the victims, Darryl Crawford, was killed by a bullet wound to the chest. Police obtained a description of Appellant and Harris, as well as the Escort, from the third person who had been standing on the corner. Several days later, on July 1, 1993, police were called to the scene of another murder in West Philadelphia which had involved a black Ford Escort station wagon with tinted windows. Police were also given a description of one of the occupants of the Escort. Later that day, while on patrol, Officer Kenneth Pringle spotted a black Ford Escort station wagon with tinted windows near the location of the second murder. Before he could pull the Escort over, it stopped and parked across the street from a blue Mercedes. The driver, who identified himself as Ivan Bingham, said he owned the Mercedes. The passenger, James Washington, claimed to be the owner of the Escort. The police subsequently learned the Mercedes had been stolen in a carjacking on June 27, 1993, but found no owner of record for the Escort. Washington and Bingham were taken into custody and both automobiles were seized. Eventually, police arrested Duane King in connection with the July 1, 1993 murder. King made statements which also implicated himself in the June 27, 1993 murder, as well as Appellant, Harris, Turner, Bingham, and Clinkscales. Police thereafter also obtained a statement from Clinkscales, which similarly implicated Appellant, King, and the others in the June 27, 1993 murder.

On July 24, 1996, a jury convicted [Appellant] of second-degree murder, robbery, possessing an instrument of crime, and criminal conspiracy for the robbery and killing of Dwayne Crawford on June 27, 1993.[FN1] On October 26, 1996, the trial court sentenced [Appellant] to a mandatory term of life imprisonment for murder and concurrent terms of imprisonment on the remaining convictions. On direct appeal, this Court affirmed the judgments of sentence on October 20, 1999, and the Supreme Court denied allocatur on March 21, 2000. [Appellant] did not appeal to the United States Supreme Court.

[FN1] The Philadelphia Court of Common Pleas docket reflects that [Appellant] was born on August 15, 1973, and was therefore over the age of eighteen at the time of the murder.

On March 30, 2001, [Appellant] filed a *pro se* PCRA petition alleging after-discovered evidence in the form of an affidavit from Duane King[FN2] dated March 12, 2001, recanting King's prior statements and testimony. The PCRA court appointed counsel, who filed an Amended Petition. In July 2002, the PCRA court held a two-day evidentiary hearing to assess King's new version of events. On January 28, 2003, the PCRA court concluded that King's purported recantation was not credible and dismissed [Appellant's] petition.[FN3] [Appellant] appealed to this Court, which affirmed on February 11, 2005. Our Supreme Court denied [Appellant's] petition for allowance of appeal on July 26, 2005.

> [FN2] King was one of [Appellant's] co-conspirators. He entered into a plea in which the Commonwealth permitted him to plead guilty to third-degree murder in exchange for his cooperation and testimony in the prosecution of the charges against [Appellant].

> [FN3] On January 28, 2004, King was convicted and sentenced for six counts of perjury and one count of false swearing based on his testimony at [Appellant's] evidentiary hearings.

On June 18, 2008, [Appellant] filed his second PCRA petition. Court-appointed counsel filed a "no merit letter" pursuant to **Commonwealth v. Finley**, [550 A.2d 213 (Pa. Super. 1988) (*en banc*),] indicating that the issues raised by [Appellant] were untimely, and that no additional issues could be raised. On January 14, 2010, after conducting an independent review of the record, the PCRA court dismissed the petition without a hearing. [Appellant] did not appeal.

A month later, on February 19, 2010, [Appellant] filed [his third PCRA petition] alleging after-discovered evidence in the form of an affidavit from Cleophus Sharpe, a fellow inmate, who claimed to have witnessed Duane King and an unknown male (not [Appellant]) murder Darryl Crawford. Court-appointed counsel filed an Amended Petition. On July 6, 2012, the PCRA court held an evidentiary hearing during which the Commonwealth presented juvenile court records revealing that Sharpe had been placed in a juvenile residential placement facility on June 23, 1993, four days before the murder. The court appointed counsel for Sharpe, who invoked his Fifth Amendment right to remain silent. The court granted a continuance, and on October 12, 2012, [Appellant's] court-appointed counsel filed a supplemental petition raising a

new claim: [Appellant's] mandatory life sentence violates the Eighth Amendment prohibition against cruel and unusual punishment under the United States Supreme Court's holding in ***Miller v. Alabama***, [567 U.S. 460 (2012)], because [Appellant] was under the age of 25 when the murder occurred. On June 10, 2013, the PCRA dismissed [Appellant's] petition as time-barred.

***Commonwealth v. Dickerson***, 1809 EDA 2013, 2014 WL 10965783, at *1-2 (Pa. Super. filed Mar. 26, 2014) (unpublished mem.) (some citations omitted).

On March 26, 2014, this Court affirmed the order dismissing Appellant's third PCRA petition. ***See id.*** at 1. Appellant did not seek petition for allowance of appeal in our Supreme Court.

On March 30, 2016, Appellant filed his fourth PCRA petition, which the PCRA court dismissed without a hearing on June 15, 2017. Appellant did not seek appellate review of that dismissal.

On August 12, 2024, Appellant filed the instant PCRA petition – his fifth. The PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing on March 21, 2025 and, ultimately, dismissed Appellant's petition on May 15, 2025.

Appellant filed a timely notice of appeal. The PCRA court did not issue an order directing Appellant to file a Pa.R.A.P. 1925(b) statement.

On appeal, Appellant raises the following claim for our review:

Did the PCRA court err as a matter of law, and deny [Appellant] due process of law, by dismissing [Appellant's] PCRA petition as untimely where [Appellant] overcame the PCRA time-bar by presenting proffer that established that the Commonwealth violated the dictates of ***Brady v. Maryland***, 373 U.S. 83 (1963) by withholding evidence of an official misconduct regarding

- 4 -

Detective David Baker, the Commonwealth's key witness at a post-trial hearing to refute [Appellant's] co-defendant's testimony that his trial testimony was perjured?

Appellant's Brief at 4.

In reviewing an order denying a PCRA petition, our standard of review is well settled:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and some formatting altered).

The timeliness of a PCRA petition is a threshold jurisdictional question. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014); *see also Commonwealth v. Ballance*, 203 A.3d 1027, 1031 (Pa. Super. 2019) (stating that "**no court** has jurisdiction to hear an untimely PCRA petition" (citation omitted and emphasis in original)). "A PCRA petition, including a second or subsequent one, must be filed within one year of the date the petitioner's judgment of sentence became final, unless he pleads and proves one of the three exceptions outlined in 42 Pa.C.S. § 9545(b)(1)." *Commonwealth v. Jones*, 54 A.3d 14, 16 (Pa. 2012) (citation and footnote omitted). A judgment of sentence becomes final at the conclusion of direct review, or at the expiration of time for seeking such review. *See id.* at 17.

Courts may consider a PCRA petition filed more than one year after a judgment of sentence becomes final if the petitioner pleads and proves one of the following three statutory exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). A petitioner asserting one of these exceptions must file a petition within one year of the date the claim could have first been presented. **See** 42 Pa.C.S. § 9545(b)(2).[2] It is the petitioner's "burden to allege and prove that one of the timeliness exceptions applies." **Commonwealth v. Albrecht**, 994 A.2d 1091, 1094 (Pa. 2010) (citations omitted and some formatting altered).

To establish the newly-discovered fact exception to the PCRA time bar, a petitioner must demonstrate that he did not know the facts upon which he

_____

[2] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. **See** 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted). Due diligence requires that the petitioner take reasonable steps to protect his own interests. *See id.* (citation omitted).

It is well settled that a *Brady* claim may fall within the governmental interference and newly-discovered fact exceptions to the PCRA time bar. *Commonwealth v. Natividad*, 200 A.3d 11, 28 (Pa. 2019).

With respect to the newly-discovered fact exception at Section 9545(b)(1)(ii), the petitioner must establish that "the facts upon which the *Brady* claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008) (citation omitted). However, the Section 9545(b)(1)(ii) newly discovered fact exception does not have the same requirements as a *Brady* claim, as it "does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to [the] appellant, nor could they have been ascertained by due diligence." *Id.*

In the context of Section 9545(b)(1)(i)'s governmental interference exception, a petitioner raising a *Brady* claim "must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the

exercise of due diligence." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008).

Additionally, "if a PCRA petitioner alleges sufficient facts in his petition to implicate the plain terms of the exception, he must be afforded a hearing to prove those contested allegations and the applicability of the exception with admissible evidence." ***Commonwealth v. Brown***, 350 A.3d 12, 14 (Pa. 2026).

Here, it is undisputed that Appellant's instant PCRA petition is facially untimely as it was filed more than twenty-four years after his judgment of sentence became final on June 19, 2000, at the expiration of time for him to petition the United States Supreme Court for *certiorari*. ***See Dickerson***, 2014 WL 10965783, at *3; 42 Pa.C.S. § 9545(b); ***see also Jones***, 54 A.3d at 16-17.

To overcome the PCRA's jurisdictional time-bar, Appellant pled both the newly-discovered facts and governmental interference exceptions. ***See*** Appellant's Brief at 5, 17. Specifically, Appellant alleges that the Commonwealth suppressed a police misconduct form showing that Detective David Baker had a 1998 misconduct infraction in an unrelated case in violation of ***Brady***. ***See id.*** at 10. Appellant contends that he discovered this misconduct disclosure on August 4, 2024, when it was provided to him by another inmate. ***See id.*** at 11-12. Appellant claims that the police misconduct disclosure form is relevant to his case because it could have been used as impeachment evidence at the 2002 PCRA evidentiary hearing where

Appellant presented the recantation testimony of Duane King. [3] ***See id.*** at 18-19.

The PCRA court addressed the timeliness of Appellant's PCRA petition as follows:

> In an attempt to satisfy the governmental interference exception, 42 Pa.[C.S.]§ 9545(b)(1)(i), on a ***Brady*** basis and/or the newly-discovered fact exception, 42 Pa.[C.S.] § 9545(b)(1)(ii), [Appellant] purports that the Commonwealth suppressed the record of interrogating officer and witness Detective David Baker's prior professional misconduct. As evidentiary support, [Appellant] attaches four undated lists, one published by an organization called "Right to Be Free," another apparently compiled by the Pennsylvania Innocence Project, and the others of unidentified origin, concerning Philadelphia police officers who have been accused, charged, convicted, and/or disciplined for professional misconduct. Additionally, [Appellant] includes a *Philadelphia Inquirer* article, dated July 31, 2019, regarding the exoneration of Chester Hollman III (a defendant in a matter unrelated to [Appellant's]),[FN4] as well as police misconduct disclosures pertaining to Detective Baker in unrelated matters. However, these documents do not substantiate the purported fact of ***Brady*** suppression[FN5] of Detective Baker's record of prior misconduct. These attached documents demonstrate that Detective Baker has . . . undergone investigation for prior misconduct, yet none provide any indication of Commonwealth suppression. Accordingly, Petitioner fails to plead and prove an exception to the timeliness requirement of the PCRA.
>
> > [FN4] This *Philadelphia Inquirer* article, dated July 31, 2019, mentions Detective Baker as a homicide detective in Hollman's case who had engaged in prior misconduct, namely in preventing contact between a suspect and defense attorney.

---

[3] Duane King was convicted of perjury in relation to his testimony at Appellant's PCRA evidentiary hearing. ***See Commonwealth v. King***, 939 A.2d 977 (Pa. 2007).

> Hollman had been serving a life sentence for murder until his exoneration on July 30, 2019.
>
> FN5 Petitioner names ADA Arlene Fisk as one governmental official allegedly responsible for this purported suppression. However, this assertion lacks evidentiary support.

PCRA Ct. Op., 5/15/25, at 1-2 (unpaginated) (some formatting altered and some footnotes and citations omitted).

After review, we conclude that the PCRA court's dismissal of Appellant's fifth PCRA petition as untimely is supported by the record and free of legal error.[4] *See Sandusky*, 203 A.3d at 1043.

As to the newly discovered facts exception, the police misconduct disclosure is merely a newly discovered source corroborating previously known facts. *See Commonwealth v. Mickeals*, 335 A.3d 13, 21 (Pa. Super. 2025) (stating that, to satisfy the newly discovered fact exception, "the facts must be newly discovered not merely newly discovered or newly willing sources that corroborate previously known facts or previously raised claims" (citation omitted and some formatting altered)); *see also Commonwealth*

_____

[4] We note that the PCRA court concluded that the documents provided by Appellant "do not substantiate the purported fact of *Brady* suppression." PCRA Ct. Op., 5/15/25, at 1-2. However, under the standard for the governmental interference exception, the relevant inquiry was whether Appellant's "failure to previously raise the claim was the result of interference by government officials, and [whether] the information could not have been obtained earlier with the exercise of due diligence." *Abu-Jamal*, 941 A.2d at 1268. Because the PCRA court concluded that Appellant's petition was untimely, we glean that the PCRA court determined that Appellant failed to show the Commonwealth interfered with his ability to raise his claim. To the extent that our reasoning differs from the PCRA court's reasoning, we note that we may affirm a PCRA court's order on any basis supported by the record. *See Commonwealth v. Smith*, 194 A.3d 126, 138 (Pa. Super. 2018).

*v. Hill*, 202 A.3d 792, 800-01 (Pa. Super. 2019) (finding a claim untimely where the petitioner previously raised claims of police misconduct in a prior PCRA petition but attempted to satisfy the newly discovered facts exception by proffering documents showing misconduct of the same officers in unrelated cases). Here, Appellant knew about the alleged coercion of Duane King by Detective Baker in March of 2001, during the litigation of his first PCRA petition. *See Dickerson*, 2014 WL 10965783, at *1; *see also* Appellant's Brief at 6-7. Accordingly, his discovery of the police misconduct disclosure, which Appellant argues bolsters his claim of Detective Baker's misconduct in his case, is simply a newly discovered source of previously known facts. *See Mickeals*, 335 A.3d at 21; *Hill*, 202 A.3d at 800-01.

As to the governmental interference exception, Appellant fails to prove that the Commonwealth's alleged withholding of the police misconduct form for Detective Baker interfered with his ability to raise his claim regarding the alleged coercion of Duane King by Detective Baker. *See Abu-Jamal*, 941 A.2d at 1268. As noted above, Appellant raised a claim regarding the coercion of Duane King by Detective Baker during the litigation of his first PCRA petition. *See Dickerson*, 2014 WL 10965783, at *1; *see also* Appellant's Brief at 14-15 (quoting testimony showing that Detective Baker's alleged coercion of King was raised at the evidentiary hearing in July of 2002).[5] Appellant was granted an evidentiary hearing on the claim wherein King

_____

[5] The notes of testimony from the July 2002 PCRA evidentiary hearing are not included in the certified record.

testified and recanted his statement to police and trial testimony. *See Dickerson*, 2014 WL 10965783, at *2; *see also* Appellant's Brief at 14-15. Accordingly, because Appellant raised Detective Baker's alleged coercion of Duane King in his 2001 PCRA petition, he cannot show that the Commonwealth's alleged withholding of the police misconduct disclosure prevented him from raising the same claim.[6] *See Abu-Jamal*, 941 A.2d at 1268; *see also Commonwealth v. Peoples*, 1170 EDA 2019, 2020 WL 774373, at *3 (Pa. Super. filed Feb. 18, 2020) (unpublished mem.) (rejecting an attempt to satisfy the governmental interference exception where the petitioner had previously raised misconduct of the same detective in an earlier petition because the petitioner could not show he was precluded from raising the claim earlier due to governmental interference); *Commonwealth v. Bennett*, 2411 EDA 2024, 2025 WL 1541373, at *3 (Pa. Super. filed May 30, 2025) (unpublished mem.) (finding no governmental interference causing the failure to raise a claim where a petitioner previously raised the same underlying claim in a prior PCRA petition).

_____

[6] While Appellant attempts to recast his claim regarding the alleged coercion of Duane King as a *Brady* claim, "it is well-settled that a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief . . . to relitigate previously litigated claims." *Commonwealth v. Bond*, 819 A.2d 33, 39 (Pa. 2002) (citations omitted); *see also Commonwealth v. Bethune*, 283 MDA 2023, 2024 WL 511043, at *4-5 (Pa. Super. filed Feb. 9, 2024) (unpublished mem.) (rejecting an attempt to assert the governmental interference exception where the petitioner raised a *Brady* claim because he was "attempt[ing] to recast [a] previously litigated argument"); Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

Since Appellant has failed to plead and prove an exception to the PCRA's jurisdictional time bar, his fifth PCRA petition is untimely. Accordingly, the PCRA court's dismissal of Appellant's petition as untimely is supported by the record and free of legal error. **_See Sandusky_**, 203 A.3d at 1043.[7]

Order Affirmed. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/4/2026

---

[7] We note that on January 20, 2026, Appellant filed an application for permission to file a late reply brief. We hereby grant the application and accept the reply brief as filed.